**Tanya Helena TECCE, Appellant**

v.

**John Michael HALLY, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 9, 2014.
Filed Nov. 21, 2014.
Reargument Denied Jan. 30, 2015.

Thomas E. Mincer, Milford, for appellant.

John M. Halley, pro se.

BEFORE: DONOHUE, WECHT and PLATT *, JJ.

OPINION BY WECHT, J.:

Tanya Tecce ("Wife") appeals the January 14, 2014 order that granted in part and denied in part her petition to enforce the trial court's equitable distribution order. The hearing on the petition was profoundly flawed. However, we are constrained to affirm.

■■ The trial court offered the following summary of the factual and procedural history of this matter:

Wife filed a Complaint in Divorce on July 1, 2008, which contained, *inter alia,* Count I Request for a No Fault Divorce Under Section 3301(c) and/or (d) of the Divorce Code, Count II Request for Equitable Distribution of Marital Property Under Section 3502(a) of the Divorce Code, and Count III Request for Spousal Support and/or Alimony *Pendite* [*sic*] *Lite* and Alimony Under Section 3701 of the Divorce Code.

On January 26, 2009, [John Halley ("Husband")] filed his Affidavit of Consent under Section 3301(c) of the Pennsylvania Divorce Code, and on February 11, 2009, Wife did the same. The parties went before Divorce Hearing Officer Donald W. Lehrkinder, Sr., Esq. on January 19, 2010. Hearing Officer Lehrkinder filed his Report and Recommendations on November 9, 2010. Judge Durham signed an Amended Order to the Report and Recommendations on February 23, 2011 and it was filed on February 24, 2011.

On December 7, 2012, Wife filed a Praecipe to Transmit the Record, seeking that the Court enter a divorce decree. On January 13, 2013, [the trial court] signed a Decree and Order divorcing the parties, and it was filed on January 25, 2013.

On November 8, 2013, Wife filed a Petition for Enforcement, requesting the Court to direct Husband to sign a Deed transferring the marital residence in Wife's name only, so that she may sell said residence, to enforce the alimony provision of the parties' Equitable Distribution Order, to distribute child support arrears to Wife, and for counsel fees.

The Court held a hearing on January 9, 2014 on Wife's Petition. The hearing consisted of legal argument by counsel

---

* Retired Senior Judge assigned to the Superior Court.

for both parties, and also of statements from both parties. Neither party received an oath before placing statements on the record. Husband's counsel did not dispute that the parties' Equitable Distribution Order required Husband to Pay Wife alimony in the amount of $200 per month for a term of thirty months. Further, Husband's counsel did not dispute that Husband never made said alimony payments. However, Husband's counsel [argued that] the alimony provision of the parties' Equitable Distribution Order is no longer enforceable against Husband.

Trial Court Opinion ("T.C.O."), 5/5/2014, at 3–4 (footnote and citations to notes of testimony omitted).

On January 14, 2014, the trial court entered an order that: required Husband to cooperate with the sale of the marital residence, but did not order him to sign over title to Wife; found that the parties entered into a verbal agreement that Husband would keep Wife on his health insurance in exchange for Wife foregoing alimony payments; denied Wife relief with regard to child support arrears without prejudice to Wife seeking relief with the child support section of the court; and denied Wife's request for attorney's fees in connection with the enforcement petition.

On February 10, 2014, Wife filed a notice of appeal. On February 12, 2014, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Wife timely complied. On May 5, 2014, the trial court filed its Pa.R.A.P. 1925(a) opinion.[1]

Wife raises four issues for review:

1. Did the Trial Court abuse its discretion in failing to conduct a full evidentiary hearing with sworn testimony and offers and admission of documentary and other evidence, thus depriving [Wife] of a full and fair hearing on her Petition for Enforcement of the terms of the parties' divorce?

2. Did the Trial Court abuse its discretion in depriving [Wife] of the ability to meaningfully cross-examine or otherwise challenge [Husband's] statements, when said statements were not received under oath, and no opportunity for cross-examination was offered?

3. Was the Trial Court's finding of an "enforceable verbal agreement" supported by the evidence, where as there was no "evidence" to consider, and the Court based its findings on nothing more than the unsworn statements of [Husband] and his counsel?

4. Did the Trial Court abuse its discretion where the substance of [Husband's] unsworn statements was insufficient to support the Court's findings that [Wife] had bargained away her right to post-divorce alimony in the total aggregate amount of $6,000.00?

Wife's Brief at 5–6.[2]

All of Wife's challenges relate to the method by which the trial court conducted

---

1. Husband's counsel sought to withdraw as counsel in a motion filed with this Court on June 23, 2014. Counsel's motion was granted and Husband was given leave to file a *pro se* brief. However, Husband did not file a brief and did not appear at oral argument.

2. We note that Wife cited and appended an unpublished, non-precedential memorandum opinion of this Court in her brief. Wife's Brief at 12–13, 14, 15. However, a non-precedential memorandum may not be cited. *See* 210 Pa.Code § 65.37 ("An unpublished memorandum decision shall not be relied

the hearing. After reviewing the record, we agree that the hearing was deficient.

■ Rule of Evidence 603 requires that witnesses be sworn before providing testimony:

> Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience.

Pa.R.E. 603. Here, a review of the record proves that neither Husband nor Wife was administered an oath prior to providing their statements. *See* Notes of Testimony ("N.T."), 1/9/2014, at 3–12. Moreover, the trial court acknowledged as much. T.C.O. at 4. "Without an administration of an oath to a witness, the taking of testimony is meaningless." *Commonwealth ex rel. Freeman v. Superintendent of State Corr. Inst. at Camp Hill,* 212 Pa.Super. 422, 242 A.2d 903, 908 (1968).[3] Husband's and Wife's "testimony" was a nullity. The lack of an oath means that there was no testimony. There was no record evidence upon which the trial court could support its order.

■ The error of failing to administer an oath was compounded by the fact that neither party was subject to cross-examination.

> The right of a litigant to in-court presentation of evidence is essential to due process; in almost every setting where important decisions turn on questions of fact, due process requires an opportuni-

ty to confront and cross-examine adverse witnesses.

*M.O. v. F.W.,* 42 A.3d 1068, 1072 (Pa.Super.2012). In this case, the trial court conducted a haphazard proceeding in which the parties' attorneys offered argument, peppered with interruptions by the judge and by the parties as they ventured thoughts or provided explanations. Neither Husband nor Wife had the opportunity to cross-examine the other party. While "[t]he scope of cross-examination is within the sound discretion of the trial judge," *Cacurak v. St. Francis Med. Ctr.,* 823 A.2d 159, 167 (Pa.Super.2003), the trial court may not dispense with cross-examination altogether.

■ The trial court here purported to make credibility determinations based upon this "testimony." T.C.O. at 7–9. It is axiomatic that credibility determinations must be based upon actual testimony. Because there was no oath, no competent testimony was presented to the court upon which any credibility determination could be made. Credibility and reliability of witnesses are determined "in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington,* 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Because neither Husband nor Wife had any opportunity to vindicate this essential right, the trial court had no basis whatsoever upon which it could make credibility determinations. When we speak of a judicial proceeding, we speak of a hearing, not a conversation.[4]

---

upon or cited by a Court or a party in any other action or proceeding" with two exceptions that do not apply here.)

3. We recognize that *Freeman* involves the rights of juveniles in delinquency proceedings, a fact of which the learned concurrence reminds us. Conc. Op. at 734–35. However, we cite *Freeman* for the general proposition that testimony must be sworn in compliance with Pa.R.E. 603 and 42 Pa.C.S.A. § 5901.

4. At some length, the concurrence labors to set up—and then proceeds to knock down—a straw man, expounding that the taking of evidence is not required in all judicial proceedings. *See* Conc. Op. at 735–36. Without a doubt, that is true. However, when a trial court purports to make findings of fact and credibility determinations, as it did here,

However, neither party nor counsel objected to the procedure used by the trial court during this proceeding.[5] We are not free to ignore this complete absence of objection. It is axiomatic that, to preserve an objection for appeal, the objection must be raised before the trial court. *See Green v. Green*, 69 A.3d 282, 288 (Pa.Super.2013); Pa.R.A.P. 302(a).[6] Parties may waive rights, even due process rights and other rights of constitutional magnitude. *See Tyler v. King*, 344 Pa.Super. 78, 496 A.2d 16, 24 (1985). Pennsylvania's appellate courts have held, without apparent exception, that the failure to object to unsworn testimony subjects a litigant to waiver. *See City of Philadelphia v. White*, 727 A.2d 627, 629 (Pa.Cmwlth. 1999); *Morra v. Com., Dep't of Transp., Bureau of Driver Licensing*, 667 A.2d 468,

469 (Pa.Cmwlth.1995); *Godding v. Swanson*, 173 Pa.Super. 575, 98 A.2d 210, 213 (1953).[7]

A proceeding that is so fundamentally flawed as the one that occurred here offends fundamental fairness and demands correction. The trial court made factual findings and credibility determinations without taking testimony, without receiving evidence and without allowing cross-examination. This was plain error. Moreover, neither party has invoked or even mentioned waiver on this appeal. And yet, we are bound by our precedents to invoke waiver *sua sponte* in this case. Despite the fundamental flaws in the trial court's "hearing," our law is clear. We may not afford relief when no objection has been

---

there must be an evidentiary basis upon which to do so.

**5.** As the legendary advocate Brendan Sullivan famously observed, lawyers are not potted plants. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1105 (Pa.Super.2007) ("One is reminded of the quote from Attorney Brendan V. Sullivan in the 1987 Oliver North hearings, when, after he was criticized for making an objection, Sullivan responded, 'I'm not a potted plant. I'm here as a lawyer. That's my job.'"). If and when a trial judge begins to proceed without a record, it is incumbent on counsel respectfully to demand such record. Lawyers and their clients are entitled to expect that trial judges will not take offense when counsel reminds the court of its obligation to ensure that hearings proceed on a record. From time to time, family law practitioners (and judges) are heard to complain that they are not taken seriously, or are treated as second class citizens in our judicial system. The best antidote to such discrimination is for family law attorneys and judges to practice, and to demand, formality and respect for the rules of evidence and procedure. *See generally*, David N. Wecht, *The Discipline of Rules*, 29 Pennsylvania Family Lawyer, 138 (2007).

**6.** The concurrence helpfully provides a litany of citations to additional precedents applying

our waiver doctrine. *See* Conc. Op. at 733–34.

**7.** Jurisdictions across the United States have held similarly; indeed, the cases are legion. *See United States v. Odom*, 736 F.2d 104, 114 (4th Cir.1984); *United States v. Perez*, 651 F.2d 268, 273 (5th Cir.1981) ("It has long been the general rule that even a failure to swear a witness may be waived."); *Williams v. Harris*, 80 So.3d 273, 278–79 (Ala.Civ.App. 2011); *Harbit v. Harbit*, 3 So.3d 156, 160 (Miss.Ct.App.2009); *Brown v. Ristich*, 36 N.Y.2d 183, 366 N.Y.S.2d 116, 325 N.E.2d 533, 538 (1975); *State v. Norman*, 137 Ohio App.3d 184, 738 N.E.2d 403, 412 (1999); *Goforth v. State*, 921 P.2d 1291, 1293 (Okla. Crim.App.1996); *Beck v. State*, 719 S.W.2d 205, 214 (Tex.Crim.App.1986); *Hanson–Metayer v. Hanson–Metayer*, 193 Vt. 490, 70 A.3d 1036, 1047 (2013). We acknowledge as an outlier an older common pleas court case that holds to the contrary: *DeWitt v. Oppel*, 14 Pa. D & C.2d 23 (C.P. Cumberland Cty.1958) (stating that the reasons why an oath is required "are so basic and fundamental to the administration of justice that we have no difficulty in deciding that the requirement of swearing witnesses is not one that may be waived by a party."). Our decisional law is clear that such leniency will no longer be brooked, if ever it was.

made. We are constrained to affirm the trial court's order.

Order affirmed.

Judge PLATT joins the opinion.

Judge DONOHUE files a concurring opinion.

## CONCURRING OPINION BY DONOHUE, J.:

I agree with the learned Majority's determination that Wife waived the issue she presents on appeal. I write separately because I do not share the Majority's distaste for that result. The law is eminently clear that we are required to find waiver both because Wife failed to preserve the issue in the trial court and because she has filed a grossly deficient appellate brief.

The Supreme Court of Pennsylvania has discussed the vital importance of issue preservation as follows:

> Issue preservation is foundational to proper appellate review. Our rules of appellate procedure mandate that '[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.' Pa.R.A.P. 302(a). By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. *Lincoln Philadelphia Realty Assoc. v. Bd. or Revision of Taxes of Philadelphia*, 563 Pa. 189, 758 A.2d 1178, 1186 (2000). This jurisprudential mandate is also grounded upon the principle that a trial court, like an administrative agency, must be given the opportunity to correct its errors as early as possible. *Wing v. Com. Unemployment Comp. Bd. of Review*, 496 Pa. 113, 436 A.2d 179, 181 (1981). Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. *See generally Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114, 116–17 (1974). Finally, concepts of fairness and expense to the parties are implicated as well.

*In re F.C. III*, 607 Pa. 45, 2 A.3d 1201, 1211–12 (2010).

It is axiomatic that "[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." *Thompson v. Thompson*, 963 A.2d 474, 475–76 (Pa.Super.2008); *see also Mazlo v. Kaufman*, 793 A.2d 968, 969 (Pa.Super.2002). "On appeal the Superior Court *will not* consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected." *Thompson*, 963 A.2d at 476 (emphasis added). As noted in the passage above, Rule of Appellate Procedure 302, "Requisites for Reviewable Issue," provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a). Moreover, the Rules of Appellate Procedure provide that an appellant must indicate in both the statement of the case and argument portions of his or her brief where the issue was raised or preserved in the court below. Pa.R.A.P. 2117(c); Pa.R.A.P. 2119(e). The law and our Rules could not be more clear: Mother failed to preserve her issues in the trial court, and so this Court is precluded from considering them.

Secondly, Wife's appellate brief contains precisely zero citation to relevant authority. Rule of Appellate Procedure 2119(a) provides as follows:

The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, *followed by such discussion and citation of authorities as are deemed pertinent.*

Pa.R.A.P. 2119(a) (emphasis added). The failure to provide discussion of and citation to relevant authority is a substantial impediment to our review; for that reason, it results in waiver of the issue. *Giant Food Stores, L.L.C. v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 444 (Pa.Super.2008) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.... Failure to do so constitutes waiver of the claim."); *see also Coulter v. Ramsden*, 94 A.3d 1080, 1089 (Pa.Super.2014) (finding appellant's issue waived due to lack of "any meaningful discussion of relevant legal authority").

Wife cites only one "authority": an unpublished memorandum decision from this Court.[1] The Majority correctly points out that our Rules prohibit its citation and the memorandum has no precedential value. *See* Maj. Op. at 730–31 n. 2. Thus, Wife's complete and utter failure to provide citation to relevant authority is another basis for this Court to find that Wife has waived the issues presented for review.

Before eventually properly applying the principles of issue preservation and waiver, the Majority dissects the lax procedure employed by the trial court; specifically, its failure to swear witnesses and allow the parties the opportunity for cross-examination. I do not dispute that witnesses are to be sworn before testifying. Section 5901 of the Judicial Code provides that "[e]very witness, before giving any testimony shall take an oath in the usual or common form[.]" 42 Pa.C.S.A. § 5901(a).[2] However, I do not agree with the Majority's broad conclusion that the failure to administer an oath necessarily renders testimony a "nullity." Maj. Op. at 731.

In this regard, the Majority quotes *Commonwealth ex. rel. Freeman v. Superintendent of State Corr. Inst. at Camp Hill*, 212 Pa.Super. 422, 242 A.2d 903 (1968), for the proposition that the taking of testimony is meaningless without the administration of an oath. Maj. Op. at 730–31. *Freeman*, however, dealt specifically with the effects of the United States Supreme Court decision of *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), a landmark case that "set forth several procedural requirements which must be met in juvenile proceedings" and altered the informal manner in which juvenile delinquency proceedings had been routinely held in Pennsylvania. In that case, this Court held that in the wake of *Gault*, "a determination of delinquency ... cannot be sustained in the absence of [s]worn testimony subjected to the opportunity to cross-examination" where such requisites were not previously required. *Freeman*, 242 A.2d at 908. It is clear that the quasi-criminal nature of the delinquency proceedings spurred these changes to those informal proceedings, and that the discussion regarding the impact of routinely accepting unsworn testimony was made

---

1. Wife's counsel on appeal was not her trial counsel. Wife's counsel on appeal was counsel to one of the parties on appeal in the unpublished memorandum decision upon which she relies in the case before us.

2. Pennsylvania Rule of Evidence 603 mirrors this requirement, providing that "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience." Pa.R.E. 603.

specifically in connection with these considerations. *See id.* at 907–08.

There is scant case law discussing the failure to swear a witness.[3] However, this Court has considered waiver in connection with the failure to object when no oath is administered prior to testimony taken by deposition. As with judicial proceedings, the witness in a deposition must be sworn prior to giving testimony. *Id.;* Pa.R.C.P. 4017(a). This Court has held that the lack of objection to a witness's failure to be sworn at the time of a deposition results in the waiver of this error.[4] *Wenham Transp., Inc. v. Radio Const. Co.,* 190 Pa.Super. 504, 154 A.2d 301, 303 (1959). Indeed, the Rules of Civil Procedure governing discovery now mandate this result: objections regarding the administration of the judicial oath are waived if not raised at the time of the deposition. Pa.R.C.P. 4016(c). There is, to me, no reasoned differentiation in this context between deposition testimony and testimony offered at a hearing. If the objection to the error is raised at the deposition, it can be corrected; if it is raised at the hearing, the error can be corrected. In either context, the failure to object prevents the opportunity to correct the error.

I disagree, too, with the Majority's broad statement that a judicial proceeding must involve the presentation of evidence. Maj. Op. at 731 ("When we speak of a judicial proceeding, we speak of a hearing, not a conversation."). There are myriad judicial proceedings that do not require the taking of testimony or reception of evidence; for instance, proceedings to resolve preliminary objections, motions for judgment on the pleadings, and motions for summary judgment. *See* Pa.R.C.P. 1028, 1034, 1035.2. Moreover, even in a proceeding where evidence is received, by testimony or otherwise, a party may always waive his or her right to present evidence or cross-examine witnesses; indeed, a party may choose to do so for tactical reasons. As these facets of a judicial proceeding may be waived, they cannot be, as the Majority contends, indispensable for a valid judicial proceeding.

It is of little wonder that no objection was made to the trial court's failure to administer the oath. The transcript of the hearing leads to the inevitable conclusion that the parties were satisfied with the manner in which the trial court proceeded. The Majority correctly describes what occurred in the proceeding in question as argument by the parties' counsel interspersed with statements by the parties themselves. After addressing the issues raised by Wife in her petition, the trial court said, "All right, I believe I understand the parties' positions on all three issues, so I thank you and I will take this under advisement. . . ." N.T., 1/9/14, at 46. At no time did either party's counsel inquire of the trial court when testimony would be taken or seek to cross-examine the adverse party as to any statement he or she made during the course of the

---

**3.** In addition to the *Freeman* case cited by the Majority, in *Dunsmore v. Dunsmore,* 309 Pa.Super. 503, 455 A.2d 723 (1983), this Court remanded a case "with instructions to start over again" because of various procedural errors, including the trial court's decision to allow the father in that case to testify without being sworn because he was a practicing attorney. Unlike in the present case, however, there is absolutely no indication that the appellant-mother in *Dunsmore* failed to lodge a proper objection at the time of the hearing, and so *Dunsmore* provides no guidance on the issue of whether a party may waive the failure to swear a witness as an issue for appeal.

**4.** The unsworn deposition testimony was offered for use at trial. The purpose for which the deposition testimony was offered is not clear from the *Wenham* opinion.

proceeding. Of importance, Wife's counsel voiced no concern that the proceeding was adjourned without the formal introduction or reception of evidence. The obvious conclusion is that the parties had no problem with the manner in which the proceedings occurred or that the presiding judge would decide the case on the information presented. It is only now, after receiving an unfavorable decision, that Wife takes issue with the manner in which the proceedings were conducted and seeks an impermissible second bite at the apple.[5]

Simply, this Court is prohibited from addressing an issue not raised and preserved in the trial court. There should be no hesitance by our Court to recognize that prohibition and abide by it. I wholeheartedly agree with the Majority that family law attorneys and the courts before whom they appear should abide by formal rules and procedure. See Maj. Op. at 731 n. 3. And so must we. As an intermediate appellate court, we are required by rule or Supreme Court edict to find waiver in a myriad of circumstances. I am struck by the injustice I perceive as a result of the mandatory application of mandatory waiver principles in many circumstances. However, I do not share the Majority's distaste for finding waiver in this case. Both parties were represented by counsel. No objections were lodged in the trial court. While it is troubling that trained lawyers and an experienced trial judge would allow the hearing to proceed as it did, waiver is the only possible outcome in this case.

For these reasons, I concur in the outcome reached by the Majority.

---

5. In a footnote, the Majority chides the lax practice of family law attorneys and courts and encourages them to adopt formality in their practice by abiding by the Rules of Civil Procedure. Maj. Op. at 731 n. 3. I agree that to the extent some counsel and trial courts are lax, the legal profession, litigants, and the judicial system require adherence to the rules of procedure and evidence to preserve confidence in the outcome of cases. Trial courts should be diligent and trial counsel should insist, by objection to laxity, that the appropriate procedures are followed.